Gregory James GANT, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–01–00172–CR.

Court of Appeals of Texas, Tyler.

Feb. 5, 2003.

Discretionary Review Refused Sept. 3, 2003.

---

Kenneth R. Hawk II, Tyler, for appellant.

Edward J. Marty, Tyler, for state.

Panel consisted of WORTHEN, C.J., and GRIFFITH, J.

## OPINION

SAM GRIFFITH, Justice.

Gregory James Gant ("Appellant") appeals his conviction for possession of marijuana, for which he was sentenced to imprisonment for thirty years. Appellant raises four issues on appeal. We affirm.

### BACKGROUND

On June 11, 2000, Appellant was driving eastward on Interstate 20 with two passengers in the car. Texas Department of Public Safety Trooper Wayne Hellen ("Hellen"), while stopped on the interstate that night,[1] observed Appellant's car as it passed, but was unable to see if Appellant had properly displayed a license plate.

---

1. Hellen had just finished with an unrelated traffic stop.

Hellen pursued Appellant and noticed that Appellant was driving very erratically, weaving and almost hitting a car in the next lane, then driving past the painted shoulder line onto the shoulder of the road before returning the car to a more normal lane position. Hellen turned on his rotating lights and continued to pursue Appellant. When Appellant failed to pull his car over, Hellen activated his siren and Appellant pulled over and stopped his car. Hellen testified that while pursuing Appellant, he noticed what appeared to be a temporary tag in Appellant's car's rear window, but could not observe the tag in any detail because it was not illuminated.

Once stopped, Appellant immediately exited his vehicle and quickly met Hellen on the side of the highway at the rear of the vehicle. Hellen testified that at the time Appellant approached him, he had not yet been able to determine if the license tag was in compliance. Hellen testified that as Appellant approached him, he smelled marijuana on Appellant's clothing. Hellen then spoke to the passenger, a man identified by Appellant as Rambo.

Hellen testified that as he spoke to Rambo, he observed that Rambo was trying to hide something under his feet, in front of his seat on the floorboard. Hellen further testified that while he was talking to Rambo he was able to smell the strong odor of marijuana in the car. Hellen then asked Rambo to exit the car and reached for the door to open it. As the door opened, Rambo forcefully knocked Hellen aside and fled the scene. As Rambo fled, Hellen struggled with him, causing Rambo to leave two items behind—a shoe and a bag containing eight pounds of marijuana. Hellen held the bag of marijuana close to Appellant and asked if he knew what it was. Appellant answered that he did not know what the substance was.

Appellant was charged with possession of between five and fifty pounds of marijuana and pleaded "not guilty." Appellant subsequently filed a motion to suppress arguing that the marijuana was seized as a result of an unconstitutional detention. The trial court overruled Appellant's motion to suppress and the matter proceeded to trial.

Following the close of evidence, the parties made their jury arguments. During the State's initial closing argument, the prosecuting attorney argued that considering the amount of marijuana in the car and considering the fact that Appellant's clothes smelled of marijuana, Appellant truly knew what the substance was. During Appellant's jury argument, Appellant's counsel attempted to generally discuss the topic of a person's familiarity with the smell of marijuana. The State objected arguing that the trial court had not permitted the State to introduce such evidence. The trial court instructed the jury to disregard the statement. Appellant's counsel subsequently discussed the video evidence of Appellant's traffic stop noting that when Hellen asked Appellant if he knew what the substance was, Appellant said he did not know. The State again objected on the same grounds it had raised previously. However, the trial court overruled the State's objection. Subsequently, the State made its rebuttal to Appellant's jury argument. In rebuttal, the prosecuting attorney, directing the jury's attention to the video evidence, stated as follows:

> You know what you saw. You know the demeanor of the defendant. We don't expect you to believe what he said. Do you really think when the officer took him the bag of marijuana and said, "Hey, do you know what this is," and he goes, "No," that he didn't really know what marijuana was; that he never seen it before; never smelled it? You got to

watch his demeanor; you got to watch the way he....

Appellant objected that such argument was not supported by the evidence. The trial court overruled Appellant's objection and instructed the jury that while inferences are permitted in argument, if such inferences disagree with what they recalled the evidence to be, then they should disregard them. Ultimately, the jury found Appellant guilty as charged and the trial court, finding enhancements based on prior felony convictions to be true, sentenced Appellant to imprisonment for thirty years.

### EVIDENTIARY SUFFICIENCY

 In his first issue, Appellant contends that the evidence is both legally and factually insufficient to support the jury's verdict. Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia,* 443 U.S. 307, 315–16, 99 S.Ct. 2781, 2786–787, 61 L.Ed.2d 560 (1979); *see also Escobedo v. State,* 6 S.W.3d 1, 6 (Tex.App.-San Antonio 1999, no pet.). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson,* 443 U.S. at 320, 99 S.Ct. at 2789; *see also Johnson v. State,* 871 S.W.2d 183, 186 (Tex.Crim. App.1993). The evidence is examined in the light most favorable to the jury's verdict. *See Jackson,* 443 U.S. at 320, 99 S.Ct. at 2789; *Johnson,* 871 S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida,* 457 U.S. 31, 41–42, 102 S.Ct. 2211, 2217–218, 72 L.Ed.2d 652 (1982).

 In considering factual sufficiency, we must first assume that the evidence is legally sufficient under the *Jackson* standard. *See Clewis v. State,* 922 S.W.2d 126, 134 (Tex.Crim.App.1996). We then consider all of the evidence in the record related to Appellant's sufficiency challenge, not just the evidence which supports the verdict. We review the evidence weighed by the jury which tends to prove the existence of the elemental fact in dispute and compare it to the evidence which tends to disprove that fact. *Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). We are authorized to disagree with the jury's determination, even if probative evidence exists which supports the verdict. *Clewis,* 922 S.W.2d at 133. However, factual sufficiency review must be appropriately deferential so as to avoid the appellate court's substituting its own judgment for that of the fact finder. Our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Santellan,* 939 S.W.2d at 164. Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *See VanZandt v. State,* 932 S.W.2d 88, 96 (Tex.App.-El Paso 1996, pet. ref'd). Ultimately, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine our confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). We will set aside a verdict "only if the evidence supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust." *Ortiz v. State,* 93 S.W.3d 79, 87 (Tex.Crim.App. 2002).

■ The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim.App.1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

■ A person commits the offense of possession of marijuana if he knowingly or intentionally possesses a usable quantity of marijuana. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a) (Vernon Supp. 2003). To prove unlawful possession of a controlled substance, the State must show that the defendant (1) exercised care, control, and management over the controlled substance and (2) knew that it was a controlled substance. *See King v. State,* 895 S.W.2d 701, 703 (Tex.Crim.App.1995); *Humason v. State,* 728 S.W.2d 363, 364 (Tex. Crim.App.1987), *overruled on other grounds, Geesa v. State,* 820 S.W.2d 154, 157 (Tex.Crim.App.1991), *overruled on other grounds, Paulson v. State,* 28 S.W.3d 570, 573 (Tex.Crim.App.2000). Proof of the appellant's mere presence in the vicinity of a controlled substance is not enough. *See Humason,* 728 S.W.2d at 365. Rather, the State must prove an affirmative link between the defendant and the drug. *See McGoldrick v. State,* 682 S.W.2d 573, 578 (Tex.Crim.App.1985). Possession need not be exclusive, however, and a showing of joint possession with another is sufficient. *See Siroky v. State,* 653 S.W.2d 476, 479 (Tex.App.-Tyler 1983, pet. ref'd). Whether the possession of the accused is sole or joint, an affirmative link must be established between the accused and the controlled substance by proof of other independent facts and circumstances, and such

affirmative link may be established by circumstantial evidence. *Id.*

■ Circumstances that may link a defendant to the controlled substance include: (1) the defendant was present when the search was executed; (2) the contraband was in plain view; (3) the contraband was in close proximity to or accessible by the defendant; (4) the defendant was under the influence of contraband; (5) the defendant was in possession of other contraband when he was arrested; (6) the defendant made incriminating statements when he was arrested; (7) the defendant attempted to flee; (8) the defendant made furtive gestures; (9) there was an odor of the contraband present at the scene; (10) other contraband or drug paraphernalia were present which were not included in the charge; (11) the defendant owned or had a right to possess the place where the controlled substance was found; (12) the contraband was found in an enclosed place; (13) there was a significant amount of contraband; and (14) the defendant possessed weapons or large amounts of cash. *See de la Garza v. State,* 898 S.W.2d 376, 379 (Tex.App.-San Antonio 1995, no pet.); *Hernandez v. State,* 867 S.W.2d 900, 904 (Tex. App.-Texarkana 1993, no pet.); *Castillo v. State,* 867 S.W.2d 817, 820 (Tex.App.-Dallas 1993), *vacated and remanded on other grounds,* 913 S.W.2d 529 (Tex.Crim.App. 1995). The number of affirmative links present is not as important as the degree to which they tend to link the defendant to the controlled substance. *Williams v. State,* 906 S.W.2d 58, 65 (Tex.App.-Tyler 1995, pet. ref'd).

■ Appellant argues that there is a lack of direct evidence that he possessed any contraband. However, the evidence showed that (1) Appellant owned the vehicle and was present when it was searched, (2) the eight pounds of marijuana was in

close proximity to Appellant,[2] (3) there was an odor of the contraband both on Appellant's clothes and in the car, (4) the size of the bag containing the eight pounds of marijuana was large,[3] (5) Hellen followed Appellant for nearly a mile with his flashing lights activated before Appellant pulled to the side of the road, (6) Appellant was weaving while Hellen was pursuing him, and (7) Appellant quickly exited the vehicle upon being stopped rather than waiting for Hellen to approach the vehicle.[4] We conclude that the quality of these factors is sufficient to link Appellant to the contraband in question.

■ Furthermore, there is some circumstantial evidence to allow the jury to reasonably conclude that Appellant knew the eight pounds of marijuana was contraband. As set forth above, Hellen testified and the video evidence reflected that Appellant failed to pull over promptly once Hellen activated his emergency lights. Hellen testified that he pursued Appellant for nearly a mile before Appellant finally pulled to the side of the road. Moreover, as Hellen pursued Appellant, Appellant's car swerved over the lane-dividing line. Hellen testified that this could have resulted from Appellant's watching him in his rear-view mirror. Finally, the video testimony reflects that Appellant quickly exited the vehicle once he had pulled over. The jury could reasonably infer that Appellant was attempting to prevent Hellen from drawing nearer to the vehicle, thus preventing him from smelling the odor emit-

ted from the eight pounds of marijuana that Rambo possessed in the front seat.

Turning to the question of factual sufficiency, Appellant contends that other factors which could potentially establish affirmative links between Appellant and the eight pounds of marijuana in question fail to do so. Appellant notes that (1) Hellen testified that Appellant was not unnecessarily excited, (2) there is no evidence that Appellant appeared to be under the influence of or in possession of narcotics at the time of the arrest, (3) he was not the only person present when the contraband was discovered, (4) the evidence supports that the contraband was in the passenger compartment and there is no evidence to support that the contraband was in plain view of Appellant, (5) Appellant made no incriminating statements at the time of his arrest, (6) Appellant never attempted flight, and (7) the eight pounds of marijuana in question was found inside a bag. Moreover, Appellant argues that there is no evidence that Appellant was familiar with the smell of marijuana and notes that when questioned in the video by Hellen as to whether he knew what the contraband was, Appellant answered that he did not.

We iterate (1) that the number of affirmative links present is not as important as the degree to which they tend to link the defendant to the controlled substance, *Williams v. State*, 906 S.W.2d at 65, (2) that our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of wit-

2. Appellant concedes in his brief that the evidence is overwhelming that he was driving the automobile in which the contraband was stored and that Rambo was in actual possession of the contraband. The evidence is further uncontroverted that Rambo was sitting in the front passenger seat of the car at the time of the stop.

3. It follows that such a large bag would have been difficult for Rambo to conceal from Appellant while the two were sitting next to one another in the front seat of Appellant's car.

4. From such evidence, a jury could reasonably infer that Appellant was attempting to prevent Hellen from either looking inside his vehicle or smelling the odor of the eight pounds of marijuana within the vehicle.

ness testimony, *Santellan*, 939 S.W.2d at 164, and (3) that, where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *See VanZandt v. State*, 932 S.W.2d at 96. Neither the specific evidence chronicled by Appellant nor our review of the record in its entirety reveals any evidence causing us to conclude that the evidence supporting guilt is obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence so as to render the conviction clearly wrong and "manifestly unjust." Further still, in judging the credibility of Appellant's statement in the video that he did not know what the eight pounds of contraband was, the jury was entitled to find that Appellant's statement was not credible in light of the other evidence that tended to support that Appellant was aware that the substance was contraband. *See Thompson v. State*, 54 S.W.3d 88, 97 (Tex.App.-Tyler 2001, no pet.). Therefore, we hold that the evidence was both legally and factually sufficient to support the jury's verdict. Appellant's first issue is overruled.

### CHARGE INSTRUCTION ON THE LAW OF PARTIES

 In his second issue, Appellant contends that the court's charge instruction to the jury regarding the law of parties was erroneous because it was unsupported by the evidence. Courts may charge the jury on the law of parties, even in the absence of an allegation in the indictment charging the accused as a party, so long as such an instruction is supported by the evidence. *See Meanes v. State*, 668 S.W.2d 366, 372 (Tex.Crim.App.1983); *see also Westerman v. State*, 144 Tex.Crim. 101, 104, 161 S.W.2d 95, 96 (1942). A person is criminally responsible as a party to an offense if the offense is committed by the conduct of another for which he is "criminally responsible." *See* TEX. PEN. CODE ANN. § 7.01(a) (Vernon Supp.2003).

A person is "criminally responsible" for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense. *See* TEX. PEN.CODE ANN. § 7.02(a)(2) (Vernon Supp.2003). The State must show that the defendant knew he was assisting the commission of the offense. *See Amaya v. State*, 733 S.W.2d 168, 174 (Tex.Crim.App.1986). Participation in a criminal offense may be inferred from the circumstances. *See Beardsley v. State*, 738 S.W.2d 681, 684 (Tex.Crim.App.1987). While an agreement of the parties to act together in common design can seldom be proven by direct evidence, the State can rely on the actions and words of the parties showing, by either direct or circumstantial evidence, an understanding and common design to do a certain act. *See Mayfield v. State*, 716 S.W.2d 509, 514 (Tex.Crim.App.1986), *overruled on other grounds, Solomon v. State*, 49 S.W.3d 356, 368 (Tex.Crim.App. 2001).

 As set forth above, there was sufficient evidence to prove that Appellant knowingly possessed the marijuana in question. Although Appellant argues that Rambo had actual possession of the contraband when it was recovered by Hellen, we note that the law allows for joint possession with another. *See Siroky*, 653 S.W.2d at 479. A person possesses a substance when he exercises "care, custody, control, or management" over the substance. TEX. PEN.CODE ANN. § 1.07(a)(39) (Vernon 1994). A person who possesses an article may exercise custodial and managerial powers to ensure exclusivity of possession, to allow others access only, or to allow others to exercise care, custody, control, or management over the article. *Segura v. State*, 850 S.W.2d 681, 685 (Tex.

App.-Corpus Christi 1993, no pet.). A rational jury can conclude beyond a reasonable doubt that two persons who have joint care, custody, control, or management over the same article are aiding each other's care, custody, control, or management of the article. *Id.* at 685–86. Each person in joint possession aids the other's possession by allowing the other to possess the article instead of divesting the other of possession. *Id.* at 686. Each possessor encourages the other by giving peer support and confidence that the pair, having an interest in defending the article from interlopers, can better defend it than could a single person. *Id.* Given evidence which showed two persons jointly possessed an article, a rational jury could likewise conclude beyond a reasonable doubt that each person solicited, encouraged, directed, aided, or attempted to aid the other's possession. *Id.* As such, there was evidence that Appellant was liable as a party to the offense. Therefore, the trial court committed no error in permitting a jury instruction on the law of parties. Appellant's second issue is overruled.

### LEGALITY OF SEARCH AND SEIZURE

In his third issue, Appellant argues that the trial court improperly overruled his motion to suppress because the search of his vehicle violated his protections under the Fourth Amendment to the United States Constitution. We review a trial court's ruling on a motion to suppress for abuse of discretion. *See Villarreal v. State,* 935 S.W.2d 134, 138 (Tex. Crim.App.1996); *Curry v. State,* 965 S.W.2d 32, 33 (Tex.App.-Houston [1st Dist.] 1998, no pet.). A trial court does not abuse its discretion when its decision is at least within the zone of reasonable disagreement. *See Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990).

In reviewing the trial court's ruling, we apply a bifurcated standard of review. *See Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.2000); *Hernandez v. State,* 957 S.W.2d 851, 852 (Tex.Crim.App.1998). We give almost total deference to the trial court's determination of historical facts, while conducting a *de novo* review of the trial court's application of the law to those facts. *See Carmouche,* 10 S.W.3d at 327. The trial court is the exclusive finder of fact in a motion to suppress hearing, and as such, it may choose to believe or disbelieve any or all of any witness's testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

Once a police officer makes a bona fide stop or arrest for a traffic offense, he can make an additional arrest for any other offense unexpectedly discovered while investigating or questioning the motorist. *See Attwood v. State,* 509 S.W.2d 342, 344 (Tex.Crim.App.1974). If, during routine questioning related to the traffic offense, the officer acquires probable cause on a more serious charge, he may arrest for that offense and conduct a valid search for evidence incident to that arrest. *Id.; see also Valencia v. State,* 820 S.W.2d 397, 399 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd). In addition, when an officer possesses probable cause to believe that a vehicle contains contraband, a valid search may be conducted in the part of the vehicle where the officer believes the contraband is concealed. *See Chambers v. Maroney,* 399 U.S. 42, 48, 90 S.Ct. 1975, 1979–80, 26 L.Ed.2d 419, 426–27 (1970). Analysis of probable cause is based on a "totality of the circumstances" test. *See Whaley v. State,* 686 S.W.2d 950, 951 (Tex.Crim.App. 1985). In order to temporarily detain an individual for investigation, an officer need only articulate specific facts which, taken together with rational inferences from those facts, give rise to a reasonable suspi-

cion of criminally related activity. *See Townsend v. State*, 813 S.W.2d 181, 185 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd). The odor of marijuana alone provides not only reasonable suspicion of criminal activity to justify a continued detention until a canine sweep can be performed, *see Mohmed v. State*, 977 S.W.2d 624, 628 (Tex.App.-Fort Worth 1998, pet. ref'd), but also provides sufficient probable cause for an officer to believe marijuana is concealed in the vehicle. *See Hernandez v. State*, 867 S.W.2d 900, 907 (Tex.App.-Texarkana 1993, no pet.).

■■■■ In the instant case, Hellen testified that he stopped Appellant because he could not see whether Appellant had properly displayed his license plate[5] and because Appellant's vehicle was weaving[6] as Hellen pursued him. Appellant argues that once Hellen determined that his license tag was displayed in the window, the reason for the stop was satisfied and further detention of Appellant was not warranted. However, Appellant fails to address Hellen's testimony that (1) when Appellant approached him, Hellen had not yet been able to determine if the license tag was in compliance, and (2) as Appellant approached, Hellen smelled marijuana on Appellant's clothing. Hellen further testified that during his initial questioning of Rambo, he smelled the odor of marijuana emanating from within the vehicle.

In sum, the purpose of the stop was justified. When Hellen smelled the odor of marijuana on Appellant's clothes as Appellant approached him, he was justified in detaining Appellant further. During this continued detention, Rambo, following a struggle with Hellen, fled the scene. During the struggle to prevent Rambo's flight, Hellen recovered a bag containing eight pounds of marijuana from Rambo and Appellant was placed under arrest. We conclude that Appellant's detention did not violate Appellant's constitutional rights and hold that the trial court did not abuse its discretion in overruling Appellant's motion to suppress. Appellant's third issue is overruled.

### JURY ARGUMENT

■■■■ In his fourth issue, Appellant argues that the trial court improperly overruled his objection to the prosecuting attorney's statement during jury argument that Appellant was familiar with the smell of marijuana. When reviewing alleged error in a jury argument, we must analyze the statement in light of the entire argument and not on isolated instances. *See Drew v. State*, 743 S.W.2d 207, 220 (Tex. Crim.App.1987). Proper jury argument must fall within at least one of the following four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *See Davis v. State*, 964 S.W.2d 14, 17 (Tex.App.-Tyler 1997, no pet.). In order to constitute reversible error, the argument must be extreme or manifestly improper, violative of a mandatory statute, or inject new facts harmful to the accused into the trial proceedings. *See McKay v. State*, 707 S.W.2d 23, 38 (Tex.Crim.App. 1985). Counsel is to be given wide latitude in drawing inferences from the record, as long as the inferences are reasonable and offered in good faith. *See Coble v. State*, 871 S.W.2d 192, 205 (Tex.Crim.App.1993).

---

5. TEX. TRANSP. CODE ANN. § 502.404 (Vernon 1999).

6. *See Held v. State*, 948 S.W.2d 45, 51 (Tex. App.-Houston [14th Dist.] 1997, pet. ref'd) (officer's observation of a driver weaving is sufficient to give rise to a reasonable suspicion that the driver may be intoxicated).

 Appellant argues that there was no evidence that Appellant was familiar with the smell of marijuana, and thus, the State's argument concerning the same was improper. We disagree. In the video of Appellant's traffic stop, following Rambo's escape, Appellant was placed under arrest, handcuffed, and laid out on the ground by another officer. Hellen subsequently approached Appellant, held the bag containing eight pounds of marijuana very close to Appellant and asked Appellant if he knew what it was. Appellant responded that he did not know what the substance was.

As set forth above, the jury was entitled to find that Appellant's statement that he did not know what the substance was to be not credible, *i.e.*, Appellant knew the substance was marijuana. At trial, Hellen testified regarding methods of determining if marijuana is present. Hellen stated that marijuana has a "distinctive odor" and that "you know what it is once you've smelled it several times." Given Hellen's testimony concerning the distinctive odor of marijuana and considering the small distance the bag containing eight pounds of marijuana was held from Appellant, the jury could have reasonably inferred that in order to make the determination that he did not know what the substance was, Appellant either must have looked at the marijuana, smelled it, or both. Since there was evidence that marijuana can be identified by its smell, it follows that if the jury concluded that Appellant knew the substance was marijuana, then it was likewise entitled to conclude that Appellant knew what marijuana smelled like. Thus, we conclude that the prosecutor's suggestion that Appellant really was familiar with the smell of marijuana was a reasonable deduction from the evidence and hold that the trial court did not err in overruling Appellant's objection thereto. Appellant's fourth issue is overruled.

Accordingly, we *affirm* the judgment of the trial court.