11th Court of Appeals
Eastland, Texas
Opinion
 
Louis Leroy Kline
            Appellant
Vs.                  No. 11-04-00076-CR -- Appeal from Palo Pinto County
State of Texas
            Appellee
 
            The jury convicted Louis Leroy Kline of manufacturing 200 grams or more but less than 400
grams of methamphetamine and assessed his punishment at confinement for 99 years and a $50,000
fine. We affirm.
            In two issues, appellant challenges both the legal and factual sufficiency to support the
conviction. Specifically, appellant contends that the State failed to affirmatively link him to the
contraband. We disagree.
            In order to determine if the evidence is legally sufficient, we must review all of the evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307 (1979); Jackson v. State, 17 S.W.3d 664 (Tex.Cr.App.2000). In order to determine if the
evidence is factually sufficient, we must review all of the evidence in a neutral light and determine
whether the evidence supporting guilt is so weak that the verdict is clearly wrong and manifestly
unjust or whether the evidence contrary to the verdict is so strong that the beyond-a-reasonable-doubt
burden of proof could not have been met. Zuniga v. State, 144 S.W.3d 477 (Tex.Cr.App.2004); Ross
v. State, 133 S.W.3d 618 (Tex.Cr.App.2004); Vasquez v. State, 67 S.W.3d 229 (Tex.Cr.App. 2002);
Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126 (Tex.Cr.
App.1996). 
            Gary Miller testified that he lived three miles south of Mineral Wells on Old Dog Pound
Road. On the evening of June 6, 2003, he was outside his home visiting with some friends from
Kansas when a pickup pulled into his driveway. Robert Dee Colston was driving the vehicle. 
Appellant was sitting by the passenger door, and a female was sitting between the two men. 
Someone in the pickup asked Miller if they could put something in the barrel where Miller burned
his trash, and Miller said yes. Miller saw appellant walk over to the trash barrel and put something
in it.
            Shortly thereafter, Palo Pinto County Sheriff Deputy Michael Lindbloom and his partner
arrived and began to speak with Miller. Miller then saw appellant take a “jug” out of the back of the
pickup and walk over to some brush on his property. The brush was in an area not visible to the
deputies. The deputies were still there when appellant returned from the brush. Miller stated that
appellant was not carrying anything when he walked back to the pickup.
            Miller was positive that it was appellant and not Colston who carried the item to his trash
barrel and who carried the jug to the brush because Colston was in a wheelchair. Miller stated that
he had no idea what appellant and Colston were doing.
            Deputy Lindbloom testified that he was on patrol when both he and his partner smelled the
odor of ether on FM Road 2256, also known as Old Dog Pound Road. The officers followed the
odor to Miller’s property. Deputy Lindbloom saw appellant walking from the brush and toward a
pickup. The odor of ether was coming from the area behind appellant. In the bed of the pickup,
Deputy Lindbloom saw a “pit bull kind of” dog, a one-gallon garden weed sprayer, an ice chest, a
pink tub, and a plastic gallon container with some type of solution in it. Inside the pickup, officers
found coffee filters, lithium batteries, three syringes, a piece of cotton, and a spoon. 
            Deputy Lindbloom stated that the odor of ether was associated with methamphetamine labs
and that garden weed sprayers could be made into hydrochloric acid gas pumps for use in the
manufacturing of methamphetamine. The other items found in the pickup were consistent with what
Deputy Lindbloom had found in methamphetamine labs. 
            In appellant’s pocket’s, Deputy Lindbloom found a plastic bag containing smaller plastic
baggies, a plastic tube from a pen with a burnt end, brass fittings, and a lighter. A piece of tin foil
with burned residue was found near the rear bumper of the pickup. Deputy Lindbloom stated that
the burnt plastic tube and the tin foil were consistent with smoking methamphetamine.
            While Colston was out of the pickup and sitting in his wheelchair, Deputy Lindbloom saw
him drop a plastic bag containing 16 smaller plastic bags. The plastic bags were consistent with the
types of bags used to distribute methamphetamine.
            In the area of the brush from where he had seen appellant walk to the truck, Deputy
Lindbloom found a white gallon jar with a lid. Palo Pinto County Sheriff Deputy Terry McDaniel,
who was serving as an assistant commander of the Cross Timbers Task Force, identified the liquid
in the jar as being in the final stage of the manufacture of methamphetamine. The liquid had a strong
odor of ether and only needed to be poured through a filter to separate the sediment. The sediment,
after drying, would be the final product. The sediment tested to contain methamphetamine. 
            Deputy McDaniel stated that officers searched Miller’s residence, his barn, his outbuildings,
the vehicle of his friends from Kansas, and his trash barrel. Except for the jar in the brush and the
contents of Colston’s pickup, the only other item the officers found that was consistent with the
manufacturing of methamphetamine was in the trash barrel. Everything in the trash barrel was
burned except for a “pump-up type garden sprayer”that appeared to be an “improvised” HCL
generator. Miller told the officers that the sprayer was not his. Deputy McDaniel testified that the
trash in the barrel was still smoking and was still warm.
            The jar recovered from the brush and the jar found in the bed of the pickup contained a total
of 265.87 grams of methamphetamine.
            Palo Pinto County Deputy Sheriff Cory McCurtain testified that it was not illegal to possess
garden sprayers, coffee filters, lithium batteries, and small plastic baggies by themselves. 
However, when these items were found in combination as in the present case, Deputy McCurtain
stated that it indicated the manufacturing of methamphetamine.
            At the punishment phase of the trial, appellant testified that no one asked to use Miller’s trash
barrel, that he did not throw anything into the trash barrel, and that he used the garden sprayer in the
pick-up for “herbicides for weed control.” Appellant stated that he had not walked out into the brush
but that he had “stepped around” the pickup near Miller’s residence to use the bathroom. Appellant
stated that, earlier that evening while they were leaving a convenience store, the woman had asked
him to hold the small plastic baggies for her because her hands were full. Appellant stated that he
had never been around methamphetamine labs; that he did not smell any ether that night; and that,
while at one time in his life he used methamphetamine “quite often,” he had quit. 
            The jury was the finder of fact and the sole judge of the weight and credibility of the
witnesses’ testimony. TEX. CODE CRIM. PRO. ANN. art. 36.13 & 38.04 (Vernon 1979 & 1981).
As such, the jury could have reasonably concluded that appellant committed the offense. After
searching the entire area, the only items associated with the manufacture of methamphetamine were
found in areas that appellant was seen exercising control over. It was undisputed that the other male
was unable to walk. Appellant was the only person seen taking items out of the bed of the pickup,
and he was seen carrying an item to the trash barrel. After the deputies arrived, he was seen carrying
an item to the brush. The jar of methamphetamine found in the brush was discovered in the area
where appellant had been seen. Items associated with the manufacture of methamphetamine were
found in the pocket of appellant’s pants and in the trash barrel. The evidence affirmatively linked
appellant to the methamphetamine. Brown v. State, 911 S.W.2d 744 (Tex.Cr.App.1995); Martin v.
State, 753 S.W.2d 384 (Tex.Cr.App.1988); Pollan v. State, 612 S.W.2d 594 (Tex.Cr.App.1981);
Wootton v. State, 132 S.W.3d 80 (Tex.App. - Houston [Dist. 14th] 2004, pet’n ref’d); Gant v. State,
116 S.W.3d 124 (Tex.App. - Tyler 2003, pet’n ref’d). The evidence is both legally and factually
sufficient to support the conviction, and the issues are overruled.
            The judgment of the trial court is affirmed.
 
                                                                                    JIM R. WRIGHT
                                                                                    JUSTICE
February 17, 2005
Do not publish. See TEX.R.APP.P. 47.2(b).
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.